**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| vs. | ) | Case No. 04 C 793 |
| | ) | |
| **BRIAN PFEIFFER** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In 2007—three years after he was initially charged—Brian Pfeiffer pled guilty to possession with intent to distribute a controlled substance, specifically, MDMA, more commonly referred to as Ecstasy. In February 2008, Judge James Moran sentenced Pfeiffer to one day in prison, followed by a supervised release term of three years, including twenty-four months of home detention without electronic monitoring. The case was subsequently reassigned to the undersigned judge. In April 2010, Pfeiffer moved to terminate the remainder of his probation, arguing that his compliance with its terms demonstrated that he was not a risk to society. The Court granted the motion.

Pfeiffer now moves to expunge the records of his conviction. For the reasons stated below, the Court denies Pfeiffer's motion.

### Background

The entirety of Pfeiffer's involvement in drug dealing is not entirely clear to the Court, given that he pled guilty and a full record was never developed. From what the Court can tell, Pfeiffer was an active participant in selling significant amounts of ecstasy in early 2004. On February 27, 2004, Pfeiffer arranged the sale of 400 ecstasy pills to a

DEA confidential source. Pfeiffer pled guilty to count two of the indictment, admitting that he possessed Ecstasy with intent to distribute.

At some point between February 27, 2004 and end of the government's investigation, Pfeiffer appeared to have a change of heart and no longer wished to sell drugs. On May 13, 2004, an undercover agent attempted to engage Pfeiffer in a drug transaction. Pfeiffer declined to sell the undercover agent drugs and also declined to point him in the direction of someone who could, indicating that he did not care and that he simply wanted to have fun. On September 9, 2004, the investigation concluded, and Pfeiffer was arrested.

Since then, Pfeiffer has led what appears to be a law-abiding and successful life. He describes himself as a publicist, event-planner, and founder and CEO of the company through which he works in Chicago and Las Vegas. He volunteers with a variety of organizations and individuals, many of whom submitted letters to the Court on his behalf. He has expressed his deep regret for participating in drug-possession and sales, and he has apologized to the Court for his prior criminal behavior.

It appears that Pfeiffer had been successful in putting his past behind him and maintaining uninterrupted employment, at least until recently. In 2015, Pfeiffer failed a background check mandated by Wynn Hotels—a hotel chain with which Pfeiffer works in Las Vegas. The background check came as a result of a new policy instituted by Wynn barring persons with criminal convictions from promoting events associated with the chain. Pfeiffer contends that Wynn's new policy is likely to spread through Las Vegas, pointing to pending legislation that would codify an expanded version of Wynn's policy if adopted. *See* Pfeiffer Aff., Ex. 1 ¶¶10-12. Pfeiffer contends that his current

2

underemployment resulting from his inability to promote events at Wynn and his prospective future unemployment if the referenced legislation is adopted counsel in favor of expungement.

**Discussion**

Though there has been considerable debate among the circuits, the Seventh Circuit has made it clear that district courts have authority to expunge records of criminal convictions that are kept by the judiciary. *See United States v. Flowers*, 389 F.3d 737, 739 (7th Cir. 2004) ("[D]istrict courts do have jurisdiction to expunge records maintained by the judicial branch"); *but see United States v. Coloian*, 480 F.3d 47, 52 (1st Cir. 2007) (holding that District Courts do not have jurisdiction to grant expungement motions on exclusively equitable grounds); *United States v. Meyer*, 439 F.3d 855, 859-60 (8th Cir. 2006) (same); *United States v. Dunegan*, 251 F.3d 477, 479 (3d Cir. 2001) (same). Because the Seventh Circuit's case law governs here, the Court unquestionably has authority to entertain Pfeiffer's request.

The Seventh Circuit has established a balancing test to determine whether expungement is appropriate in a given case: "if the dangers of unwarranted adverse consequences to the individual outweigh the public interest in maintenance of the records, then expunction is appropriate." *Flowers*, 389 F.3d at 739 (quoting *United States v. Janik*, 10 F.3d 470, 472 (7th Cir. 1993)). The balance only rarely tips in favor of expungement, even when the request is to expunge an arrest record following an acquittal. *See, e.g., Scruggs v. United States*, 929 F.2d 305, 307 (7th Cir. 1991) (affirming denial of request to expunge arrest records even though defendant had been found not guilty). Expungement is considered an extraordinary remedy, and the

3

adverse consequences to the defendant must be unwarranted and significant before the defendant's interest outweighs the strong public interest in maintaining accurate and unaltered records. *Flowers*, 389 F.3d at 740.

There is no denying that Pfeiffer has suffered adverse consequences from his narcotics conviction. But this does not, by itself, justify expungement: the Seventh Circuit has determined that the adverse consequences must be unwarranted. "The phrase does not refer to adverse consequences which attend to every arrest and conviction." *Id.* at 739.

As a general rule, courts do not consider a formerly convicted defendant's difficulty in finding or keeping employment to be an unwarranted consequence of a criminal conviction. *See id.* at 739-40 ("[I]f employment problems resulting from a criminal record were sufficient to outweigh the government's interest in maintaining criminal record, expunction would no longer be the narrow, extraordinary exception, but a generally available remedy.") (quoting *United States v. Smith*, 940 F.2d 395, 396 (9th Cir. 1991)).

In some situations, courts have ordered expungement following events like mass arrests, arrests based on discriminatory voting laws, and arrests made to harass workers. *See United States v. Schnitzer*, 567 F.2d 536, 539 (2d Cir. 1977); *United States v. McLeod*, 385 F.3d 734 (5th Cir. 1967). In each of those cases, the arrests were the results of constitutional violations with far-reaching impacts. This rendered unwarranted any adverse consequences stemming from the arrests. By contrast, there is nothing unique when a check on a job applicant returns a valid conviction.

That is not to say that adverse consequences related to employment may *never*

4

be considered as grounds for expungement. In the Eastern District of New York, Judge John Gleeson found that an ex-offender's complete inability to retain employment because of her conviction was grounds for expungement. *United States v. Doe*, 110 F. Supp. 3d 448 (E.D.N.Y. 2015). In reaching that conclusion, Judge Gleeson described what made the consequences in the defendant's case extraordinary: her offense of conviction happened seventeen years earlier, making it "distant in time and nature from her present life"; her criminal record had a dramatic effect on her ability to work, causing her to lose half a dozen jobs; her age made it unlikely that she would commit another crime; and she had been only a minor participant in a nonviolent crime. *Id.* at 455. And in *United States v. Bohr*, 406 F. Supp. 1218 (E.D. Wis. 1976), a district court ordered expungement in a case involving a lawyer who was indicted for fraud in which the charges had later been dismissed. The Court did so to allow the lawyer to gain employment and admission to the bar of another state without undue harm to his reputation. But unlike Bohr, Pfeiffer was convicted, and the employment-related consequences that he has suffered are dramatically different from what the defendant in *Doe* experienced.

Pfeiffer cites *Bohr* for the proposition that employment opportunities in one state are not adequate substitutes for a career in another. But in *Bohr*, the fact that the defendant was employed in one state and wished to be employed in another was merely contextual; the court did not make a finding along the line that Pfeiffer suggests. *See Bohr*, 406 F. Supp. at 1220. The court ruled that expungement was appropriate because Bohr had only been indicted and arrested, not tried; his indictment had been dismissed; his expungement motion was unopposed by the United States Attorney; and

5

there was a great potential that unwarranted inferences would be drawn from Bohr's arrest and indictment records, constituting an unwarranted stain on his reputation as an attorney. *Id.*

Here, there is not the same danger of unwarranted inferences. Unlike the defendant in *Bohr*, Pfeiffer pled guilty and was found guilty of a felony. His involvement in a drug deal—though it may be long over—is a matter of uncontested fact.

Beyond that, and just as significantly, Pfeiffer has not shown a need to be employed solely in the state which he fears adverse consequences. In *Bohr*, the defendant had moved to Arizona and wished to pursue a full-time position there. By contrast, Pfeiffer works in both Chicago and Nevada. He has demonstrated a partial detriment to his ability to get work in Nevada, but he has said nothing regarding his career in Chicago.

Pfeiffer's circumstances are likewise significantly different from those of the defendant in *Doe.* In attempting to show that he has faced unwarranted adverse consequences stemming from his conviction, Pfeiffer points to his inability to work with Wynn and the prospective difficulties he faces in his event planning business in Las Vegas. In other words, he has been precluded from working with one company in one of his two cities of residence. He has not shown that a significant amount of his business came from working with Wynn or that the Wynn ban prevents him from otherwise conducting business in Las Vegas. As for the proposed legislation, Pfeiffer's concerns are speculative at this point, because there is no indication that the legislation has been adopted. It may never be adopted; it might be changed before its adoption; or it might take affect and yet not harm Pfeiffer's business in the ways that he fears. And

6

Pfeiffer has not shown that he will lack other realistic options or opportunities to remain employed, even in his chosen field, if he gets shut out in Nevada. Indeed, Pfeiffer's ability to successfully build a business from the ground up despite his legal struggles cuts against his argument that his conviction is likely to prevent his employment in the future.

The Court is, to be sure, cognizant of the significant adverse impact that criminal conviction may have on one's ability to obtain and retain employment and how this may impact one's ability to successfully re-enter society. A growing chorus of voices has prompted policymakers and other stakeholders in the criminal justice system to focus on this significant issue and to re-examine how our society addresses it. As Judge Gleeson noted in *Doe*:

> For example, in 2011, Attorney General Eric Holder called on the states to review the more than 38,000 statutes and regulations that impose collateral consequences and to eliminate those that do nothing to increase public safety. In 2014, Chief Judge Jonathan Lippman of the New York Court of Appeals proposed a measure that would allow nonviolent felons to have their records sealed if they avoid re-arrest for ten years and have no prior felony convictions. Two bills that would create federal expungement authority for nonviolent offenses have been introduced in recent years, although neither advanced to a floor vote. Delaware Governor Jack Markell has used his pardon power in an effort to alleviate the stigma of criminal records and to help deserving individuals secure employment, signing almost 1,600 pardons, primarily for people convicted of minor offenses, in his six-plus years in office.

*Doe*, 110 F. Supp. 2d at 453. In Illinois, as Pfeiffer points out, employers are barred from inquiring about convictions before a job offer is made, *see* 820 ILCS 75/15(a), and they are prohibited from considering expunged records of arrests and convictions in their hiring decisions. *See* 775 ILCS 5/2-103. Public policy is evolving, and there is increasing support for mitigating the collateral consequences of convictions in

appropriate circumstances.  Pfeiffer has failed to show, however, that expungement is appropriate in his case.  He has been able to obtain employment in the past.  He has not actually faced the primary adverse consequence that he fears, and there is no certainty that he will.  And even if the proposed Nevada legislation is adopted, there is no basis to believe that Pfeiffer's Chicago employment will be adversely affected.

If Pfeiffer were able to show adverse consequences that were "uniquely significant¨ as required by *Flowers*, the Court would be ready and willing to support his request for expungement.  But each case is driven by its own facts, and the facts here do not support expungement of the records of Pfeiffer's conviction.

## Conclusion

For the foregoing reasons, the Court denies defendant's motion for expungement [dkt. no. 141].

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  April 7, 2016